779 F.2d 215
 RICO Bus.Disp.Guide 6134
 B.K. COPELAND, individually and d/b/a International Science
and Technology Institute, Inc., Appellant,
v.
Aric SMITH; William A. Turner; AMA Food Broker; F and G
Associates, Inc.; Donald Taifero and Safeguard
Chemical Corp., Defendants,
and
Emily G. Grimes; Floyd Johnson; Frank Phillips and Impress
Food Products Co., Inc., Appellees.
 No. 84-2266.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 8, 1985.
Decided Dec. 16, 1985.
 
 Mark Rollinson (Lynne K. Zusman; Rollinson & Zusman, Alexandria, Va., on brief), for appellant.
 John A. Field, III (Field & Halfhill, Alexandria, Va., on brief); P. David Gavin, Washington, D.C., Jeremy Rubenstein (Mark R. Eaton, Stoppelman, Rosen, Eaton & De Martino, Washington, D.C., Peter A. Bair, Bair & Cassel, P.C., Falls Church, Va., Utz Toepke, Schwartz, Klink & Schreiber, P.C., New York City, on brief), for appellees.
 Before HALL and SPROUSE, Circuit Judges and BUTZNER, Senior Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 In his action in the district court, the appellant B.K. Wesley Copeland alleged that Aric Smith, Frank Phillips, Floyd Johnson, Emily Grimes, Impress Products (a food distribution company)[1] and several other defendants formed an association "in fact" to sell him worthless accounts receivable.[2] Copeland charged all of the defendants with common law fraud and violation of the civil provisions of RICO.[3]
 
 
 2
 Prior to trial, the district court entered a default judgment against Smith,[4] and granted summary judgment in favor of Impress on both the fraud and RICO counts, and in favor of Phillips on the fraud count. Trial then proceeded against Phillips on the RICO count and against Grimes and Johnson on both counts. At the conclusion of Copeland's evidence, the district court dismissed all of the remaining actions except for the fraud count against Johnson, who had not defended the action. The court entered judgment for Copeland on this count.
 
 
 3
 Copeland appeals the district court's denial of his RICO claims against Phillips, Impress, Grimes and Johnson. He has not appealed the district court's dismissal of his common law fraud claims against Phillips, Grimes and Impress. Consequently, the issue in this appeal is whether the four appellees were part of an enterprise to defraud Copeland by selling him worthless accounts receivable in violation of civil RICO provisions. In disposing of Copeland's claims against the four appellees, the district court found, as a matter of fact, that none of them was involved in an enterprise. The court's determination was not clearly erroneous, and we affirm.
 
 
 4
 The genesis of the controversy before us is a scheme which Aric Smith apparently concocted to defraud Copeland, among others, by selling him invalid accounts receivable involving invoices for merchandise allegedly sold in the food industry. Smith created a food brokerage business, AMA Food Brokers, Inc., and sold minimal quantities of food to military bases and other customers as a broker for wholesale food companies. In January 1984, Smith, as president of AMA, proposed to Copeland that Copeland factor AMA's accounts receivable consisting of commissions which various wholesalers purportedly owed to the company. Copeland alleged that these wholesalers and their employees whom he named as defendants conspired with Smith to provide false information causing him to believe that AMA had sold their companies' products, and, therefore, that their companies owed broker's commissions to AMA. According to Copeland, these misrepresentations led him to believe that the accounts receivable which AMA was selling to him were valid.
 
 
 5
 In February 1984, Copeland purchased from AMA a receivable with a face value of $22,105.60 purportedly due to AMA from defaulted defendant F & G Associates, a wholesale food merchant. Copeland paid Smith $13,263.36 for the receivable due April 14, 1984. Later in February, he paid $15,160 for a counterfeit receivable with a face value of $28,600 allegedly due to AMA from Safeguard Chemical Corporation. Two months after purchasing the F & G receivable, Copeland received a letter from defendant Floyd Johnson, an officer of F & G, stating that Copeland would be unable to collect on the receivable. According to Johnson's letter, a customer had returned soft drinks which AMA had supposedly brokered because of an error in shipping the goods. Consequently, the receivable no longer existed. Copeland then asked Smith to return his money. When Smith said he had no money, Copeland asked for another valid receivable. Smith then offered Copeland the right to commissions which he alleged Impress owed AMA. In order to check the validity of the offered Impress receivable, Copeland reviewed accounting information sent by Smith and delivered by Wanda Banks, a Smith associate. Copeland and Banks examined the purported accounting information for several hours and agreed that it was not complete. During his meeting with Banks, Copeland telephoned defendant Phillips, an officer of Impress, to verify the account receivable. Phillips told Copeland that if AMA had sold merchandise for Impress, AMA would have owing to it a commission from Impress.[5]
 
 
 6
 Copeland developed this evidence with the testimony of six witnesses during the half-day trial. At the conclusion of Copeland's case, the district court granted Phillips' and Grimes' motion to dismiss under Fed.R.Civ.P. 41(b). Based on the testimony, the district court found that there was no evidence to link Phillips to what Copeland asserted was an "enterprise." We agree with the district court. Furthermore, this finding precludes any possible theory of liability under civil RICO on the part of Impress in that Copeland's only contact with Impress was through Phillips.
 
 
 7
 Equally nonexistent is any evidence linking Grimes to an "enterprise" formed or operated to defraud Copeland. The evidence, at best, demonstrates that Grimes was a close friend of Smith. Copeland testified that he saw Grimes twice:
 
 
 8
 [t]he first time, when Mr. Smith came to my office, she was in his car or her car--I don't know whose car it was. Outside of my building, he introduced me to her as an officer of AMA.
 
 
 9
 The next time I met her was in his office on Connecticut Avenue late one afternoon when I simply stopped by there. Since I had already met her before that, there was no introduction. I just said hello to her. Then, I talked to her one more time. This was on the telephone when I had called her house because I understand that Aric was--Mr. Smith was living with her--to try to reach him.
 
 
 10
 The district court, understandably, found that this testimony was not evidence of an "enterprise" and that Grimes was not involved in Smith's fraudulent activities. The court concluded that Copeland had failed to present any evidence from which the court could infer any wrongdoing on her part.
 
 
 11
 Finally, we consider Copeland's RICO allegation against Johnson. Johnson did not defend the action at trial. Copeland testified that he telephoned Johnson, the president of F & G, before purchasing the receivable which Smith had represented as due from that company. According to Copeland, Johnson falsely represented that it was valid. Copeland had no other contact with Johnson concerning AMA's receivable or any other business involving Smith. There was no evidence that Johnson was involved in any other transaction involving AMA's accounts receivable. The district court found that, against the background of all the other evidence in the case, Copeland had not proven the existence of an "enterprise" in which Johnson participated, although the court found that evidence of this single contact was sufficient to establish common law fraud on the part of Johnson.
 
 
 12
 We cannot say that the district court's findings were clearly erroneous; therefore, the judgments of the district court are affirmed.
 
 
 13
 Affirmed.
 
 
 
 [1]
 Phillips was an officer in Impress, and his actions were the basis on which Copeland named Impress as a defendant
 
 
 [2]
 Copeland's allegations against defendants Safeguard Chemical and William Turner were dismissed without prejudice. Default judgments against AMA Food Brokers, Inc., F & G Associates, and Donald Taifero are not appealed here
 
 
 [3]
 Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq. (1982)
 
 
 [4]
 The court had also ordered a default judgment against Grimes and Phillips. On October 5, 1984, however, the court granted Grimes' and Phillips' motions to set aside the default judgments against them. Smith does not appeal the default judgment and is not a party before this court
 
 
 [5]
 Although Banks was an associate of Smith, she was not involved in the scheme to defraud Copeland. At Smith's direction, Banks had altered the documents representing the Impress accounts receivable showing the amount of goods delivered, dates, etc., and had signed Phillips' name to the document. Smith represented to her that Phillips gave him permission to sign his name. During her meeting with Copeland, Banks became apprehensive and expressed her suspicion to Copeland that the Impress receivable was not valid